## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

**FRANKLIN C.,**[1]

       **Plaintiff,**

                                 **Case No. 2:23-cv-2442**

   **v.**                             **Magistrate Judge Norah McCann King**

**FRANK BISIGNANO,**
**Commissioner of Social Security,**

       **Defendant.**

### OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Franklin C. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* Plaintiff appeals from the final decision denying those applications.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court the Court reverses the Commissioner's decision and remands the matter for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Frank Bisignano, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

## I.    PROCEDURAL HISTORY

On January 9, 2018, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging that he has been disabled since June 16, 2013. R. 569–80.[3] The applications were denied initially and upon reconsideration. R. 222–31, 235–42. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 245–47. ALJ Sharon Allard held a hearing on March 4, 2020, at which Plaintiff, represented by counsel and assisted by an interpreter, testified, as did Tanya Edghill, who testified as a vocational expert. R. 56–74. The ALJ held a supplemental hearing on May 11, 2020, at which a medical expert, Michael Betten, M.D., and a different vocational expert, Francesco Fazzolari, testified. R. 75–112 (reflecting further that Plaintiff's counsel waived additional testimony from Plaintiff when Plaintiff failed to appear). The ALJ conducted a second supplemental hearing on August 17, 2021, at which Plaintiff, who was again represented by counsel and was assisted by an interpreter, appeared; Dr. Betten again appeared and testified as a medical expert. R. 113–37. In a partially favorable decision dated September 28, 2021, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act prior to June 7, 2017, but had become disabled on that date and continued to be disabled through the date of that decision. R. 22–45. That decision became final when the Appeals Council declined review on March 6, 2023. R. 1–8.

Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On May 9, 2024, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No.

---

[3] The ALJ reopened Plaintiff's applications that had been filed on March 24, 2017. R. 22–23.

2

10.[4] On May 14, 2024, the case was reassigned to the undersigned. ECF Nos. 11, 12. The matter

is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has

explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative
> record and asks whether it contains sufficien[t] evidence to support the agency's
> factual determinations. And whatever the meaning of substantial in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial evidence, this
> Court has said, is more than a mere scintilla. It means – and means only – such
> relevant evidence as a reasonable mind might accept as adequate to support a
> conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted);

*see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations

omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and

quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091,

at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot

be set aside merely because the Court "acting de novo might have reached a different

---

[4] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases
seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot
Project (D.N.J. Apr. 2, 2018).

conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016).  The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight."  *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4.  The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict."  *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

4

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210,

221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

### B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 46 years old on June 16, 2013, his alleged disability onset date, R. 42, 590, and was thus a younger individual as defined in the Commissioner's regulations. 20 C.F.R. §§ 404.1563, 416.963. On June 8, 2017,[5] Plaintiff turned fifty years old and his age category

---

[5] As discussed later in this Opinion and Order, Plaintiff's established disability onset date is June 7, 2017.

changed to that of a person closely approaching advanced age. *Id*. Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017. R. 25.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between June 16, 2013, his alleged disability onset date, and the date of the decision. R. 25.

At step two, the ALJ found that, since June 16, 2013, Plaintiff's established conditions of glaucoma status-post multiple bilateral corneal transplants, status-post cataract surgery and glaucoma shunts, and loss of central visual acuity were severe impairments. *Id*.

At step three, the ALJ found that, from June 16, 2013, to April 16, 2018, Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 25–26.

At step four, the ALJ found that, from June 16, 2013, to June 6, 2017, Plaintiff had the RFC to perform light work except that he "could lift/carry up to 10 pounds frequently and 10 pounds occasionally; never climb ladders/ropes/scaffolds or work around hazards, including moving mechanical parts or at unprotected heights"; "was able to perform tasks that did not require depth perception or measuring accurate measurements of distance and speed"; "was only able to work with large objects and read large print"; and "was able to avoid ordinary hazards in the workplace." R. 26–34. The ALJ also found that, beginning on June 7, 2017, Plaintiff had the RFC to perform a reduced range of light work with those same limitations plus the following additional limitation: Plaintiff "will be off task 20% of the workday due to the impairments." R. 34–42. The ALJ further found that, since the alleged disability onset date, neither RFC permitted the performance of Plaintiff's past relevant work as a high-lo operator / forklift operator, which is a semi-skilled position performed at the medium level of exertion, and sound installation worker, which is a skilled position performed at the light level of exertion. R. 41–42.

At step five, and relying on the testimony of vocational expert Tanya Edghill,[6] the ALJ found that, prior to the established disability onset date of June 7, 2017, a significant number of jobs—*e.g.*, 100,000 jobs as a table worker, sedentary, SVP 2; and 10,000 jobs as a carding machine operator, sedentary, SVP 2—existed in the national economy and could be performed by Plaintiff despite his lessened capacity. R. 42–44 (finding, *inter alia*, that the testimony of vocational expert Francesco Fazzolari was inconsistent with SSR 85-15, and that vocational expert Tanya Edghill's testimony was consistent with the Dictionary of Occupational Titles ("DOT") and adopting her testimony). However, the ALJ also found that, beginning June 7, 2017, there were no jobs that existed in significant numbers in the national economy that Plaintiff could perform. R. 44–45 (finding further that, beginning April 17, 2018, the severity of Plaintiff's impairments met the criteria of Listing 2.03A, B). Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act prior to June 7, 2017, but had become disabled on that date and continued to be disabled through the date of that decision. R. 45.

Plaintiff disagrees with the ALJ's findings at steps four and five and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Moving Brief,* ECF No. 5.[7] The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's*

---

[6] The ALJ mistakenly refers to this expert as "Tonya" Edghill. R. 43.

[7] Plaintiff does not dispute the Commissioner's determination that he was disabled on June 7, 2017, but instead argues that his disability began on an earlier date. *Id*. Accordingly, the relevant adjudicatory period is from June 16, 2013, Plaintiff's alleged disability onset date, through June 6, 2017.

*Brief*, ECF No. 8.

## IV.    DISCUSSION

Plaintiff raises different challenges to the ALJ's decision, including, *inter alia*, that the

ALJ's finding that Plaintiff's disability began only on June 7, 2017, was arbitrary and

unsupported by the record. *Plaintiff's Moving Brief*, ECF No. 5, pp. 14–24. For the reasons that

follow, the Court concludes that substantial evidence does not support the ALJ's established

disability onset date.

Social Security Ruling ("SSR") 18-01p governs the determination of disability onset

dates. SSR 18-01p, 2018 WL 4945639, Determining the Established Onset Date (EOD) in

Disability Claims (Oct. 2, 2018); *see also id*. at *7 ("This SSR is applicable on October 2, 2018.

We will use this SSR beginning on its applicable date. We will apply this SSR to new

applications filed on or after the applicable date of the SSR and to claims that are pending on and

after the applicable date."); 20 C.F.R. § 402.35(b)(2) ("Social Security Rulings . . . are binding

on all components of the Social Security Administration."). SSR 18-01p provides, *inter alia*, as

follows:

> If we find that a claimant meets the statutory definition of disability and meets the
> applicable non-medical requirements during the period covered by his or her
> application, we then determine the claimant's [Established Onset Date]
> [("]EOD["]]. Generally, the EOD is the earliest date that the claimant meets both
> the definition of disability and the non-medical requirements for entitlement to
> benefits under title II of the Act or eligibility for SSI payments under title XVI of
> the Act during the period covered by his or her application.

SSR 18-01p, 2018 WL 4945639, at *2. The Ruling distinguishes between disabilities resulting

from trauma and those with a non-traumatic origin, including, *inter alia*, progressive

impairments that gradually worsen over time and exacerbating and remitting impairments. *Id*. at

*5−6. For impairments that diminish and intensify in severity over time, an ALJ must "determine

the first date that the claimant met" the statutory definition of disability. *Id*. at *5. That date "*must be supported by the medical and other evidence* and be consistent with the nature of the impairment(s)." *Id*. (emphasis added). In determining the disability onset date of such impairments, the ALJ considers, *e.g.*, "the nature of the claimant's impairment; the severity of the signs, symptoms, and laboratory findings; the longitudinal history and treatment course (or lack thereof); the length of the impairment's exacerbations and remissions, if applicable; and any statement by the claimant about new or worsening signs, symptoms, and laboratory findings." *Id*. at *6. "If the ALJ needs to infer the date that the claimant first met the statutory definition of disability," the ALJ "may call on the services of an ME [medical expert] by soliciting testimony or requesting responses to written interrogatories[.]" *Id*. (explaining further that "[t]he decision to call on the services of a ME is always at the ALJ's discretion").

In the present case, the ALJ cited Plaintiff's treatment records and Dr. Betten's testimony to conclude that Plaintiff's established disability onset date was June 7, 2017, explaining as follows:

> After careful consideration of the evidence, the undersigned finds that beginning on June 7, 2017, the established onset date, the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms. The claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are consistent with the objective medical evidence and other evidence.

> Treatment notes in June 2017 indicate the claimant had glaucoma affecting both eyes. Visual acuity on the right was 20/70 and on the left was 20/200. The left [eye] showed very hazy cornea [;] the graft remained in place. It was noted there was inferior thinning on the right nerve and moderate inferior thinning of the left nerve (Exhibit 3F [R. 712–29]).

R. 34.

> Overall, the record shows the claimant continued to have additional surgeries on both eyes. His visual acuity remained low in both eyes, with the right eye showing only hand movements and counting fingers. As outlined below, medical expert Dr.

11

Betten testified the claimant's condition ultimately met listing 2.03 A and B. The medical expert also acknowledged the claimant's condition caused multiple limitations, including in lifting/carrying, climbing and working around hazards and driving. Ultimately, the record supports the claimant's vision prevented him from performing lifting/carrying over 10 pounds, climbing ladders/ropes/scaffolds, working around hazards, such as moving mechanical parts and unprotected heights as well as from performing work requiring depth perception or measuring accurate measurements of distance and speed. The record also supports a limitation to working with only large objects and reading large print. An additional off-task limitation was provided to account for the claimant's difficulty in performing tasks, due to his declining vision.

R. 37.

The doctor [the medical expert, Dr. Betten] noted prior to April 2018, the claimant lacked depth perception and should not have worked at heights, climb ladders/scaffolds, and should not work with moving machinery. The doctor noted the claimant's near vision was also impaired (as of June 2017, per Exhibit 3F [R. 712–29]) and would have been limited to large print. He would have required magnification, such as on a computer. The doctor also advised the claimant should not have been driving.

The doctor explained the claimant's vision fluctuated between 2014 and 2017. The doctor noted the claimant had multiple surgeries on both eyes – corneal transplants, shunts, cataract surgery. The doctor advised that the claimant should not have been participating in contact sports or heavy lifting, after undergoing corneal transplants. The doctor suggested a limitation of no more than 10-15 pounds.

R. 39.

In challenging this determination of his disability onset date, Plaintiff contends that he had visual limitations beginning on his alleged disability onset date of June 16, 2013, and lasting throughout the entire adjudicative period, that the ALJ did not explain the selection of June 7, 2017, as the established disability onset date, and that there was no support for this selected date. *Plaintiff's Moving Brief*, ECF No. 5, pp. 14–24. Plaintiff further suggests that the ALJ chose June 7, 2017, only because that was the day before Plaintiff's fiftieth birthday, when he would have been found disabled under the Commissioner's regulations in any event. *Id*. (referring to the Medical-Vocational Guidelines (or "Grids"), 20 C.F.R. Pt. 404, Subpt. P, App. 2 §§ 201.09,

(providing that a person limited to sedentary work who is closely approaching advanced age,[8] with a limited or less education with unskilled or no previous work experience, will be deemed disabled), or 201.10 (providing that a person limited to sedentary work who is closely approaching advanced age, with a limited or less education with a skilled or semiskilled work experience with non-transferable skills, is disabled) and pointing out that, although Plaintiff's RFC was for light work, the two jobs identified by vocational expert Edghill as available to Plaintiff were both at the sedentary level).

The Commissioner contends that the ALJ adequately explained her selection of June 7, 2017, as the established disability onset date. "The ALJ relied heavily on the persuasive testimony of medical expert Dr. Betten, who found Plaintiff's near vision was further reduced in June 2017, (Tr. 31, 39, 87), and ultimately that Plaintiff met a visual listing on April 17, 2018, (Tr. 31–32, 44–45, 83–84, 120–121)." *Defendant's Brief*, ECF No. 8, p. 10.

The Court is not persuaded that substantial evidence supports the ALJ's selection of June 7, 2017, as the established onset date. In support of her finding, the ALJ referred to "[t]reatment notes in June 2017[.]" R. 34 (citing Exhibit 3F, R. 712–29). Setting aside the fact that this citation also includes records from April, May, and October 2017, the June treatment notes upon which the ALJ apparently relied are dated June 26, 2017, not June 7, 2017. R. 715–19. Moreover, the ALJ did not explain how the substance of these notes supported her selection of June 7, 2017, as the established onset date. The ALJ merely stated that this evidence reflected glaucoma in both eyes; that Plaintiff's visual acuity on the right was 20/70 and on the left was 20/200; that the left eye had a very hazy cornea with the graft in place; and that there was

---

[8] 20 C.F.R. §§ 404.1563(d) (characterizing a person age 50 to 54 years old as a person "closely approaching advanced age"), 416.963(d) (same).

13

inferior thinning on the right nerve and moderate inferior thinning of the left nerve. R. 34.

However, the record contains similar medical evidence reflecting that Plaintiff had glaucoma in

both eyes as early as 2013 or 2014, R. 27–29, and a very hazy cornea with graft in place in, *inter*

*alia*, April and May 2016 and April 2017, R. 721, 725, 728. Notably, Dr. Betten did not point to

thinning of the right or left nerves when discussing the evidence and the quality of Plaintiff's

vision and its consequent limitations. *See generally* R. 80–107, 118–33. In short, the treatment

notes referred to by the ALJ do not support her selection of June 7, 2017, as the established onset

date.

The hearing testimony of Dr. Betten, a medical expert, also fails to support the ALJ's

selected established onset date. The ALJ found that Dr. Betten noted that Plaintiff's "near vision

was also impaired (as of June 2017, per Exhibit 3F [R. 712–29]) and would have been limited to

large print. He would have required magnification, such as on a computer. The doctor also

advised the claimant should not have been driving." R. 39; *see also Defendant's Brief*, ECF No.

8, p. 10 (representing that Dr. Betten testified that Plaintiff's "near vision was further reduced in

June 2017") (citing R. 31, 39, 87). However, a fair reading of Dr. Betten's testimony reflects that

this medical expert actually testified that Plaintiff's vision fluctuated prior to meeting Listing

2.03A, B in April 2018—a fact that the ALJ repeatedly acknowledged, R. 26, 29, 30–33, 36, 38–

41; and that Plaintiff's limited ability to drive was present prior to April 2018 and was not

limited to June 2017:

> Q Okay. And given the claimant's diagnoses, were there any other limits that you
> thought would apply?
>
> A Well it states that near vision, near vision is described as J6, which is what we
> call J -- J-A-E-G-E-R, Jaeger 6. And J6 is about 20/60 vision. I'm talking about near
> now. So –
>
> Q What – what year are you referring to?

A So I'm saying at near, in other words close vision; reading, computer terminal, something at close. And that would be print about paper book size or paper book print and large newspaper print.

Q And again his near vision during the period prior to when he met listing would have -- when you say print about paper book size, you mean like a paperback book?

A That is correct, your Honor. Now this is documented on June 11th, 2018, Exhibit 7F, page 6.

Q And that would have been after that he – after he met the listing?

A That was June 11th 2018, yes, and I said I felt that the claimant met the listings on April 17th, 2018.

Q Yes. So prior to that what was his near vision?

A Prior to that date I cannot find any documentation, but if you can give me a second, the near vision which we are discussing on, let me get this date here for you, is in – on October 30th , 2017. No make that-- make -- excuse me, Your Honor, please make that June 26th, 2017, his near vision was J7 which is about the same as I previously described. That was on June 26th, 2017, as per Exhibit 3F, page 5.

Q And you said the vision of J7 is the same as about 20 –

A *About 20/60*, Your Honor. And that -- if I may add, that also means he would need, you know, magnification or bifocal or reading glasses to see up close.

Q And so something like a computer terminal he would need magnification?

A I believe so.

Q *Would he have had any other limits that you're aware of prior to that prior to April of -- meeting the listing in April of 2018?*

A Probably – this is my thoughts. *I would probably recommend that he not do driving.*

Q And is it your opinion that the claimant had these pre-listing limitations in 2014 through 2018?

A Not necessarily so, Your Honor. At times his vision was good 20/40, at one time 20/50 in the left eye, 20/50 in the left eye. So it depended on the -- how much disease he had in his cornea and on the control of his glaucoma. *That's why I said there was a great deal of fluctuation when I read the records.*

15

R. 86–87 (emphasis added); *see also* R. 84 (testifying that Plaintiff's vision fluctuated), 130 (same), 132 (testifying, *inter alia*, that Plaintiff's visual acuity in April 2017 was 20/60 in his right eye and 20/200 plus 1 in the left eye), 721 (containing treatment notes dated April 26, 2017, reflecting, among other things, visual acuity of 20/60 +2 and 20/200). In sum, this evidence reflects that Plaintiff's vision fluctuated during the relevant period and that the visual acuity present on June 26, 2017 (20/60) that Dr. Betten believed warranted certain visual restrictions also existed on April 26, 2017. *Id.* This record simply does not provide substantial support for the ALJ's selection of June 7, 2017, as the established disability onset date. *See* SSR 18-01p, 2018 WL 4945639, at *5 (requiring that medical or other evidence support the established onset date); *Philips v. Comm'r of Soc. Sec.*, No. 19-CV-1633 (RRM), 2021 WL 2550387, at *11–12 (E.D.N.Y. June 22, 2021) (remanding where "the Commissioner failed to comply with SSR 18-01p because the ALJ selected an onset date that was arbitrary and not supported by medical evidence").

This Court concludes that remand of the matter for further consideration of a properly-supported established disability onset date is appropriate.[9] Moreover, remand is appropriate even if, upon further examination of the medical evidence and—if appropriate—a medical expert—the ALJ again finds the same established onset date. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the

---

[9] Plaintiff also claims other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of the established onset date, the Court does not consider those claims.

.

16

ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks.").

**V.    CONCLUSION**

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  June 6, 2025                            _____*s/Norah McCann King*_____
                                               NORAH McCANN KING
                                               UNITED STATES MAGISTRATE JUDGE

17